LLOYD R. WHITAKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Whitaker v. Commissioner
Docket No. 25719-91
United States Tax Court
T.C. Memo 1994-109; 1994 Tax Ct. Memo LEXIS 110; 67 T.C.M. (CCH) 2408; March 21, 1994, Filed *110 Decision will be entered for respondent. Lloyd R. Whitaker, pro se. For respondent: James W. Ruger. SHIELDS
SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6654
1983
$ 14,275
$ 3,000.75
$ 713.75
[1]
$ 699.06
1988
6,626
634.38
430.85
--
--
The issues for decision are: (1) Whether the deficiency and the additions to tax determined by respondent with respect to 1983 are barred by the expiration of the period of limitations; [1] (2) whether for the taxable year 1988 petitioner is entitled to an alimony deduction in the amount of $ 17,892 for funds seized by his wife from his bank account; (3) whether petitioner is entitled to a charitable contribution deduction for funds totaling $ 15,743 paid by him, or his daughter, during 1988 to Vanderbilt University (Vanderbilt); (4) whether respondent settled petitioner's 1988 Federal income tax liability by accepting a check from petitioner *111 in the amount of $ 567.53; and (5) whether for the taxable year 1988 petitioner is liable for additions to tax pursuant to sections 6651(a)(1) [2] and 6653(a)(1). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. At the time he filed his petition, petitioner *112 lived in Los Angeles, California. At some point prior to 1983, petitioner retired from the U.S. Army after 21 years of service and attaining the rank of major. From 1983 through 1988, he was employed in Los Angeles by the U.S. Postal Service. He received a salary from the Postal Service in 1983 in the amount of $ 28,818 from which $ 934 was withheld as Federal income tax. During 1983 he was paid a pension for his military service in the amount of $ 16,262 by the U.S. Military Retired Pay Operations. This amount, less $ 1,383 which was withheld for Federal income tax, was deposited at petitioner's request in his account with a credit union in Nashville, Tennessee. In addition, in 1983 petitioner received an income tax refund from the State of California in the amount of $ 27. During 1983 through 1988 petitioner resided in Los Angeles, while his wife and their daughter, Susan Whitaker, resided in Nashville, Tennessee. The record fails to disclose the exact status of petitioner's marriage during this period, but petitioner testified that, during these years and until his wife's death in 1992, he and Mrs. Whitaker did not communicate with each other and he did not know whether *113 she ever obtained a divorce from him. From petitioner's testimony it is also apparent: (1) That he and his wife were separated during these years; (2) that by 1988 she had instituted in a Tennessee court a divorce or some other marital proceeding; (3) that pursuant to this proceeding she attached in 1988 his account with the credit union in Nashville containing at that time $ 17,892; and (4) that petitioner claimed an alimony deduction on his 1988 return for the $ 17,892 seized from the account. In reply to a written inquiry by respondent as to where he had filed his 1983 income tax return, petitioner replied as follows: I am almost sure that I sent this 1040 for 1983 to Philadelphia, Pa. Prior to 1984 I sent 1040's to various collectors of Internal Revenue. My reasons were that IRS continues today, as it always has done, to release private information, in violation of the Privacy Act, to the state tax collectors. At this time I had, and still have, income that never enters California, is not subject to California tax collectors, and should not be released to the state of California. As long as I have income accredited to me in another state then I feel I am permitted to *114 mail my 1040 to that particular area collector of Internal Revenue During my lifetime of moving around while working for the U.S. Government I have mailed 1040's to Santa Ana, Ca., Chicago, Ill., Atlanta, Ga., Baltimore, Md., San Francisco, [sic] Ca., and many other places. I cannot prove it [where the 1983 return was filed] because my records were stolen.
Petitioner's 1988 Federal income tax return was mailed to respondent's Service Center at Fresno, California. The return bears the date of June 27, 1989, and was stamped as being received by the Service Center on June 30, 1989. Petitioner admitted he sometimes filed income tax returns late and produced no evidence of having obtained an extension of time within which to file the 1988 return. During 1988 petitioner's daughter, Susan Whitaker, attended Vanderbilt, and Vanderbilt was paid $ 15,743 for her tuition, fees, and other expenses. Vanderbilt was paid by petitioner or by the daughter with funds furnished by petitioner. On his 1988 income tax return, petitioner claimed a charitable deduction for the $ 15,743 paid to Vanderbilt for the daughter's tuition and other expenses. Respondent determined that no Federal income *115 tax return was filed by petitioner for 1983. At trial petitioner was unable to produce a copy of such a return or any other evidence in support of his contention that a 1983 return was filed by him. On July 18, 1993, respondent mailed to petitioner a Notice of Intention to Levy with respect to his 1988 income tax liability. In the notice of levy petitioner's income tax liability for 1988 was incorrectly shown as being $ 567.53. [3] On or about July 21, 1993, petitioner mailed respondent a check in the amount of $ 567.53, together with a copy of respondent's Notice of Levy, on which he had inserted the following handwritten statement: IRS accepts this payment of $ 567.53 as full acknowledgment of all claims against L.R. Whitaker * * *, and payment in full and closing of account for period ending 12-31-88 is certified upon processing of this check * * * dated July 21, 1993.
Respondent accepted the check and applied it to petitioner's liability for *116 1988. Petitioner contends that the acceptance by respondent of the aforesaid check constituted a satisfaction by him of his entire income tax liability for 1988. OPINION Issue 1. Whether the Deficiency and the Additions to Tax Determined by Respondent With Respect to 1983 Are Barred by the Expiration of the Period of Limitations
The parties agree that the resolution of this issue depends upon whether petitioner filed an income tax return for 1983. Petitioner contends that he filed such a return with respondent's Philadelphia office and that the absence of any record by respondent of having received the return is due to the fact that the return was lost by respondent. Petitioner further contends that he is unable to produce any documentary evidence to prove he filed such a return because his briefcase containing such documents was stolen from his car in 1985. In reply to an inquiry by respondent as to where petitioner's 1983 return was filed, petitioner stated that he was "almost sure" that the return for 1983 was sent to respondent's Philadelphia office. In the same letter, and again at trial, petitioner stated that even though he was a resident of Los Angeles he had, *117 over a period of several years, filed income tax returns with several different offices of respondent. Petitioner has the burden of proving that his 1983 return was timely filed. Rule 142(a); ; . From the record before us it is clear that petitioner has failed to carry that burden. It is equally clear that during the period under consideration he foolishly followed the practice of filing income returns with respondent at different and unauthorized locations. This practice may have contributed to his inability to carry his burden with respect to whether the 1983 return was filed. In any event he has failed to carry his burden of proving that a 1983 income tax return was filed for him and consequently an assessment for 1983 is not barred by the expiration of the applicable period of limitations. Issue 2. Whether Petitioner Is Entitled to a Deduction for Alimony Payments in the Amount of $ 17,892 for the Taxable Year 1988
Section 215 permits the deduction by an individual of "any alimony or separate maintenance payment (as *118 defined in section 71(b)) which is includible in the gross income of the recipient under section 71." Sec. 215(b). Section 71(b) defines "alimony or separate maintenance payment" as follows: (1) In general -- The term "alimony or separate maintenance payment" means any payment in cash if -- (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument, (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215, (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.
(2) * * * The term "divorce or separation instrument" means -- (A) a decree of divorce or separate maintenance or a written *119 instrument incident to such a decree, (B) a written separation agreement, or (C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.
As set forth in our findings, the record is unclear as to the status of petitioner's marriage during 1988. In fact petitioner testified that he did not know whether his wife ever obtained a divorce or a provision for alimony or separate maintenance. As set forth in our findings, we know only that, pursuant to some type of marital proceeding instituted by his wife in a court in Tennessee, the funds deposited in an account in his name with a credit union in Nashville, Tennessee, were attached by her. Petitioner offered no other evidence in support of his claim that his wife's seizure of the $ 17,892 constituted an alimony payment or a payment on a separate maintenance agreement. If such evidence exists, it would be in the records of the Tennessee court and available to petitioner. Under the circumstances, we can only presume that such evidence does not exist, or that if it does, it is unfavorable to petitioner. We conclude, therefore, that petitioner has failed *120 to carry his burden of establishing that the seizure of his funds constituted the payment of deductible alimony. (citing , affd. . Issue 3. Whether Petitioner Is Entitled to a Deduction for a Charitable Contribution Paid During 1988 to Vanderbilt University
As set forth in our findings, during 1988 petitioner's daughter was attending Vanderbilt, and the university was paid $ 15,743 by petitioner or by his daughter with funds furnished by petitioner. Such payments were made for tuition, fees, and other expenses incurred by the daughter. Since these payments did not constitute payments "made as acts of detached or disinterested generosity", but payments made "for the anticipated benefit of the payor", they are not deductible as charitable contributions. (quoting ; see also . *121 Issue 4. Whether Respondent Settled Petitioner's 1988 Federal Income Tax Liability by Accepting a Check From Petitioner in the Amount of $ 567.53
Section 7121(a) authorizes respondent to enter into a written agreement with any person relating to that person's liability for any taxable period. The regulations under this section contain formal procedures for closing agreements which must be followed in order to effect a settlement. Similarly, section 7122 and the regulations thereunder deal with compromises. (citing , affg. ); secs. 301.7121-1 and 301.7122-1, Proced. & Admin. Regs. Petitioner and respondent did not comply with the specific procedures spelled out in the regulations, and respondent did not enter into any closing agreement or compromise with respect to the amount of petitioner's liability for 1988. Further, the simple acceptance and cashing by respondent of the check tendered by petitioner did not constitute an accord and satisfaction *122 of petitioner's tax liability for 1988. (citing ; see also ; ; . Issue 5. Whether Petitioner Is Liable for Additions to Tax for the Taxable Year 1988 Pursuant to Section 6651(a)(1) and Section 6653(a)(1)
Section 6651(a)(1) provides that, where a taxpayer fails to timely file an income tax return, an addition to tax in the amount of 5 percent of the amount of the tax required to be shown on the return for each month (up to a maximum of 25 percent) shall be added to the amount of the tax, unless it is shown that the taxpayer's failure is due to reasonable cause and not due to willful neglect. Petitioner did not timely file a Federal income tax return for the taxable year 1988, nor did he come forth with evidence tending to establish that *123 his failure to do so was due to reasonable cause and not due to willful neglect. Therefore, we find for respondent on this issue. Section 6653(a)(1) provides that if any part of any underpayment of tax is due to negligence or disregard of rules or regulations, an amount equal to 5 percent of such underpayment shall be added to the tax. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioner has failed to establish that he was not negligent in the preparation of his 1988 return. Therefore, we also find for respondent on this issue. Decision will be entered for respondent. Footnotes
1. 50 percent of the interest due on the amount of the deficiency.↩
1. With respect to 1983, the parties have stipulated that petitioner received the income based on which respondent determined the deficiency, and petitioner does not question respondent's determination of the additions to tax under secs. 6651(a)(1) and 6653(a)(1) and (2). Petitioner merely contends with respect to 1983 that the assessment of both the deficiency and the additions to tax is barred by the expiration of the period of limitations set forth in sec. 6501.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The record does not contain any explanation for this error.↩